IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ROBERT D. JACKSON d/b/a )
JACKSON ELECTRIC, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　　　)
v. ) Case No. CIV-06-643-D
　　　　　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant. )

**MEMORANDUM DECISION**

This matter comes before the Court for judicial review pursuant to 26 U.S.C. § 6330(d)(1) of a final determination of the Internal Revenue Service ("IRS") denying the plaintiff, Robert D. Jackson d/b/a Jackson Electric ("Taxpayer"), an installment payment agreement and an abatement of statutory penalties. Defendant United States has submitted the administrative record, and the parties have fully briefed the issues presented. Upon consideration of the record, the parties' arguments, and the governing law, the Court issues its decision.

**Procedural Background**

As a preliminary matter, the Court must explain the record and address a procedural argument raised by Taxpayer in his briefs. Taxpayer commenced this action by filing a Complaint that correctly characterized the case as an action under 26 U.S.C. § 6330(d) to review a Notice of Determination issued by the IRS Appeals Office. *See* Compl., Ex. 1 [Doc. 1-2]. In the Complaint, however, Taxpayer's allegations of error were stated as claims for relief, and he made a demand for a jury trial. *See* Compl. [Doc. 1] at 5. Upon a motion of Defendant, the previously assigned district judge, Senior Judge Ralph G. Thompson, struck the jury trial demand for the reason that an action under § 6330(d) is an administrative appeal based on an administrative record and the parties were

not entitled to discovery or a jury trial. *See* Order 9/12/06 [Doc. 10]. Nevertheless, counsel for the parties appeared for a scheduling conference and requested a standard scheduling order with a six-month period for discovery and a trial setting, which order was issued. *See* Joint Status Report & Discovery Plan [Doc. 12] at 7, 8; Scheduling Order [Doc. 13].

Within the time period set by the case schedule, Defendant filed a motion for summary judgment and submitted an administrative record as exhibits, including statements of the unpaid tax liabilities, a hearing transcript, and the declaration of the IRS appeals officer who made the subject decision, Jeffrey Silverhorn. The declaration was accompanied by copies of the Notice of Determination, an appeals case memorandum (setting forth Silverhorn's analysis), case activity records (documenting his activities regarding the case), and the documents on which he relied. Taxpayer timely opposed the motion and argued in his response brief, in part, that the motion should be stricken because summary judgment procedures are improper for an administrative appeal. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579-80 (10th Cir. 1994). Taxpayer also filed a separate motion to strike the trial setting and the scheduling order so the case could proceed as an administrative appeal; he asked that the IRS be ordered to compile and submit the administrative record and for entry of "a briefing schedule consistent with the Federal Rules of Appellate Procedure." *See* Pl.'s Mot. Strike Trial [Doc. No. 28] at 2.

Judge Thompson granted the motion to strike the trial setting and proceed with the case as an administrative appeal. He was reluctant to order new filings, however, because it appeared "the entire administrative record [had] already been filed . . . and the parties' summary judgment briefs adequately set forth their positions on the issues, including the appropriate standard of judicial review." *See* Order Striking Trial Setting [Doc. No. 33] at 1. Instead, Judge Thompson established deadlines for Taxpayer "to file an appropriate motion to raise any issue concerning the completeness

2

of the administrative record" and to file an additional brief in support of his appeal. *See id.* at 2. Taxpayer filed a timely motion asking to supplement the administrative record with additional documents obtained through the Freedom of Information Act. The motion was unopposed and was granted.[1] Taxpayer also filed a brief entitled, "Appellant's Supplemental Brief and Renewed Procedural Objection to IRS' Motion for Summary Judgment," to which Defendant was permitted to respond. The case was subsequently reassigned to the undersigned judge.

As suggested by the caption of Taxpayer's supplemental brief, he persists in arguing that summary judgment is an inappropriate means of deciding an administrative appeal. This argument is ill founded. Judge Thompson expressly ruled that this case would not be decided by summary judgment standards. Taxpayer was permitted to file an additional brief and to address the issues in the proper procedural context and on a complete administrative record. Notably, however, Taxpayer utilized his additional brief simply to incorporate by reference his original brief and to summarize his argument that the IRS abused its discretion by rejecting his proposed installment payment plan.[2] Taxpayer has not shown any prejudice from the initial briefing misstep, for which he was partially responsible. Therefore, the Court finds no merit in Taxpayer's argument that Defendant's filing of a summary judgment motion was reversible error and this case should start anew.

---

[1] From a review of the additional documents, it appears they largely duplicate ones already contained in the administrative record submitted by Defendant. *Compare* Silverhorn Decl., Ex. C [Doc. 19-4] *with* Pl.'s. Mot. Add Admin. Rec., attach. 1-4 [Doc. 34-2 to 34-5]. A few new documents are provided, but their significance is unexplained. The only substantive one appears to be notes compiled by an IRS employee outside the Appeals Office. *See* Pl.'s Mot. Add Admin. Rec. [Doc. 34], attach. 6-9. It appears the appeals officer, Mr. Silverhorn, only received part of this document, which is contained in the administrative record. *See* Silverhorn Decl., Ex. Z [Doc. 25]. As required by statute, Mr. Silverhorn had no prior involvement in the case. *See* 26 U.S.C. § 6330(b)(3). To the extent documents were not considered during the administrative appeal, and no argument is made that they should have been considered, they are not properly part of the administrative record in this case.

[2] Taxpayer does not rely on any of the additional documents in his appellate brief, other than to note differences between the FOIA copies and the administrative record. *See* Pl.'s Supp. Br. [Doc. 37] at 6 n.7.

3

**Standard of Review**

Federal appellate courts agree that the appropriate standard of judicial review in § 6330 cases such as this, where the underlying tax liability is unchallenged, is an abuse of discretion. *See Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005); *Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003); *Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 626 (6th Cir. 2005); *Kindred v. Commissioner*, 454 F.3d 688, 694 (7th Cir. 2006); *Robinette v. Commissioner*, 439 F.3d 455, 459 (8th Cir. 2006); *see also Poindexter v. Commissioner*, 321 F. App'x 771, 773 (10th Cir. 2009). This view is supported by the legislative history of § 6330, which was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112 Stat. 685, popularly known as the Taxpayer Bill of Rights. *See Preslar v. Commissioner*, 167 F.3d 1323, 1327 (10th Cir. 1999). Section 6330 created rights of taxpayers to collection due process ("CDP") hearings and other procedural safeguards before the IRS levies on a taxpayer's property. Regarding judicial review of the final determination, the House Report stated: "Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion. In such cases, the appeals officer's determination as to the appropriateness of collection activity will be reviewed using an abuse of discretion standard of review." H.R. Conf. Rep. 105-599, at 266 (1998), *reprinted in* 1998 U.S. Code Cong. & Admin. News 288.

Congress did not define the abuse of discretion standard contemplated under § 6330. The parties advocate a definition derived from the Administrative Procedures Act, 5 U.S.C. § 706(a)(2)(A), which permits courts to set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* Def.'s Mem. [Doc. 18] at 16-17; Pl.'s Br. [Doc. 27] at 18; Pl.'s Suppl. Br. [Doc. 37] at 5. However, the weight of case authority

holds that a more deferential standard is appropriate. Due to the wide latitude historically afforded the IRS in tax collection matters, the unique structure of the statute, the scant administrative record in CDP cases, and the availability of other procedural protections for taxpayers, several federal appellate courts have adopted a "clear" abuse of discretion standard. *See Christopher Cross, Inc. v. United States*, 461 F.3d 610, 612 (5th Cir. 2006); *see also Olsen*, 414 F.3d at 150-51; *Living Care*, 411 F.3d at 631; *Robinette*, 439 F.3d at 459. These courts have concluded that "'Congress likely contemplated review for a clear abuse of discretion in the sense of clear taxpayer abuse and unfairness by the IRS, lest the judiciary become involved on a daily basis with tax enforcement details that Congress intended to leave with the IRS.'" *Christopher Cross*, 461 F.3d at 612 (quoting *Robinette*, 439 F.3d at 459); *see Olsen*, 414 at 150; *Living Care*, 411 F.3d at 631. The Court finds this deferential standard is appropriate here.

### Factual Background[3]

Taxpayer, a sole proprietorship, is an electrical contractor for commercial and residential construction projects. This case concerns tax liabilities for federal employment taxes due under IRS Form 941, for the second, third, and fourth quarters of 2004, and penalties for failure to deposit and pay these taxes, plus interest, in the total amount of $107,921.85. The IRS issued notices of intent to levy on Taxpayer's property to collect these tax liabilities on, respectively, January 18, 2005; March 29, 2005; and May 2, 2005. Taxpayer, through an authorized representative, Dale Tacheny, timely filed requests for a CDP hearing with respect to each notice. Taxpayer requested an installment agreement to pay his outstanding tax liabilities and an abatement of assessed penalties for financial reasons related to his business, namely, his clients were slow in paying him for

---

[3] Before the Order Striking Trial Setting was issued, the parties had complied with the original scheduling order deadlines for trial submissions, including a joint Final Pretrial Report. This report, like the initial Joint Status Report, contains stipulations of facts, which are accepted by the Court.

completed work. The requests were assigned to Mr. Silverhorn, who conducted a face-to-face hearing at the IRS Appeals Office in Oklahoma City on July 7, 2005, and further conferred with Mr. Tacheny by telephone and correspondence. Mr. Silverhorn gathered information about Taxpayer's assets and finances, collection alternatives, and other relevant facts, discussed below. He also verified that all legal and administrative requirements had been met with respect to the issuance of the levy notices. During the administrative process, Taxpayer paid his outstanding tax liability for the second quarter of 2004, but accrued additional tax liabilities for the first and third quarters of 2005. Taxpayer paid these 2005 tax liabilities in April, 2006, upon receiving notices of intent to levy with respect to those periods.

**Agency Determination**

The IRS Appeals Office issued the Notice of Determination on May 15, 2006. The "Summary of Determination" portion of the document states the following conclusions regarding the two issues raised during the CDP process:

> During Appeals consideration you accrued additional tax liabilities for the March 31, 2005 & September 30, 2005 quarterly periods. The office of Appeals was going to recommend the CDP periods be set up on an installment payment (I/A) plan. However you do not qualify for an IA due to the additional liabilities that have accrued.
>
> Also, it has been determined that you do not meed the reasonable cause criteria for the periods at issued, [sic] thus the penalties will not be abated.

*See* Notice of Determination (Compl., Ex. 1 [Doc. 1-2]; Silverhorn Decl., Ex. A [Doc. 19-2]), at AR2 (hereafter "Notice").[4] The Notice also advised Taxpayer that the case would "be sent back to the originating Revenue Officer (R/O) assigned to the collection case to continue with the proposed

---

[4] Because the Notice is not paginated, but page numbers were added to the copy included in the administrative record submitted by Defendant as attachments to Mr. Silverhorn's declaration, the Court uses these "AR" numbers for ease of reference.

levy action. Once you become compliant, the R/O has the discretion to grant the IA." *Id*. The Notice was accompanied by an attached statement that "shows, in detail, the matters we considered at your Appeals hearing and our conclusions." *Id*. at AR1.

The attachment to the Notice recites that Taxpayer's "POA", that is, Mr. Tacheny, raised two issues at the CDP hearing: Taxpayer "should be allowed to pay the balance owing and be allowed to enter into an installment agreement for $2,000.00 per month;" and Taxpayer "should qualify for relief with respect to the federal tax deposit (FTD) penalty for all periods." *Id*. at AR4. Regarding the first issue, the attachment states Mr. Silverhorn determined that Taxpayer could make a monthly payment of only $1,213, but this amount would be sufficient to satisfy the tax liabilities within the statutory collection period. Mr. Silverhorn also stated that Taxpayer would be required to attempt to borrow funds or liquidate assets and apply the proceeds to the balance due before an installment agreement could be granted. The attachment therefore contains an analysis of Taxpayer's assets and his ability to borrow funds or collateralize assets. In this discussion, Mr. Silverhorn concluded "there appears to be equity in assets that must be addressed before IRS can consider an IA." *Id*. at AR8. However, Mr. Silverhorn also stated that, upon learning that Taxpayer had satisfied the tax lien for the second period of 2004 and another lien for an outstanding income tax liability, the issue of borrowing funds was no longer a factor in his decision.[5] Mr. Silverhorn noted Taxpayer had "not remained current with deposit requirements and continue[d] to accrue additional obligations even while your case is seriously being considered. After careful analysis, it was determined the IA could not be established at this juncture." *Id*. at AR5. The attachment states the following conclusion concerning the issue of an installment agreement:

---

[5] Specifically, the attachment states: "If your POA had simply notified the Appeals office that payment was actually made, this issue would not have been included in a prior letter which advised you that any borrowed funds must be applied to the outstanding balances before IRS can consider an IA." *Id*. at AR5.

> Based on all the information reviewed, it can be concluded the IA would be deemed a less intrusive way to collect the balance owing. However, the IA could not be established at this juncture since you have not remained compliant with current deposits and you have equity in assets that could be sold to pay the balance owing. Your request for an IA is therefore denied.

*Id*. at AR10.

Regarding the penalty issue, the attachment lists thirteen circumstances that Mr. Tacheny presented as a basis for relief from the assessed penalties, including that Taxpayer is "a second tier contractor" and "did not receive prompt payment from the first tier contractor." *Id*. at AR10-11. Mr. Silverhorn analyzed each of these circumstances and identified several that could have impacted Taxpayer's cash flow. However, a review of bank records indicated that Taxpayer "had a positive cash flow" during this period. *Id*. at AR11-12. Specifically, bank statements from April, 2004, to December, 2004, showed "there was a positive ending balance for each disputed tax quarter." *Id*. at AR13. Also, Mr. Silverhorn reviewed Taxpayer's payment history to determine whether he "had prior problems with respect to the same issue" and found he had "a history of not making federal tax deposits." *Id*. at AR12. This history included that Taxpayer had previously been granted an abatement of penalties for the fourth quarter of 2003. The attachment states the following conclusion concerning the issue of penalty abatement:

> Based on the review of all facts and circumstances, the bank statements, and the prior quarters it can be concluded you were not prudent in your decision not to make the required FTD. Therefore:
>
> It is Appeals determination the Service should not concede the FTD penalty for any of the disputed quarters.

*Id*. at AR13

**Discussion**

**I.     Installment Agreement**

8

Taxpayer contends the denial of an installment agreement was an abuse of discretion because the IRS failed to perform its statutory duty to consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the [taxpayer] that any collection action be no more intrusive than necessary." 26 U.S.C. § 6330(c)(3)C); *see* 26 C.F.R. § 301.6330-1(e)(3) (A-E8). Taxpayer asserts "the IRS failed to identify and consider assets and amounts subject to its levy that were already encumbered by liens imposed by the State of Oklahoma and that its levy was very likely to put [Taxpayer] out of business." *See* Pl.'s Suppl. Br. [Doc. 37] at 5 (footnote omitted); *see also* Pl.'s Br. [Doc. 27] at 19-20. Taxpayer argues that levying on his business assets would not benefit the IRS because state tax liens would likely have superior priority and that the IRS's interest in collecting his tax debts would be better served by an installment payment plan than the destruction of his business. Taxpayer relies on a prior decision by Judge Friot of this Court to argue that the IRS erroneously viewed him as categorically ineligible for an installment agreement because he had defaulted on his 2005 tax obligations, and consequently failed to engage in the requisite balancing analysis. *See Cox v. United States*, 345 F. Supp. 2d 1218, 1226 (W.D. Okla. 2004). Taxpayer therefore urges the Court to remand the case to the IRS for a new CDP hearing before a different appeals officer and a new consideration of an installment payment plan.

The Notice makes clear, and the administrative record reflects, that Mr. Silverhorn was informed of Taxpayer's outstanding state tax liabilities and the existence of an installment agreement with the Oklahoma Tax Commission.[6] The record does not reflect, however, that Mr. Silverhorn

---

[6] In assessing Taxpayer's ability to pay monthly installments, Mr. Silverhorn noted that the existing installment agreement required Taxpayer to pay the Oklahoma Tax Commission $1000.00 per month. Mr. Tacheny provided copies of three state tax warrants and a state court order finding a delinquency in sales and withholding taxes, interest and penalties in the amount of $112,319.51, and restraining Taxpayer from operating his business if he failed to make the monthly $1,000.00 payments.

9

was aware the state had a first priority lien on the assets subject to levy. In fact, Taxpayer in his current argument appears unsure of lien priority. He argues, in a footnote, his "belief that the State of Oklahoma's liens are superior . . . because they arose from a separate tax case that predates this matter." *See* Pl.'s Br. [Doc. 27] at 19 n.4. He further argues "it is doubtful" the IRS would receive any proceeds from a sale of assets and a sale would "likely" benefit the State of Oklahoma." *See* Pl.'s Br. [Doc. 27] at 19; Pl.'s Suppl. Br. [Doc. 37] at 5.[7] In light of this uncertainty, the Court understands Taxpayer's argument to be that the IRS erred in failing to investigate and analyze lien priority issues. *See* Pl.'s Br. [Doc. 27] at 10-11, ¶ e; *see also* Pl.'s Suppl. Br. [Doc. 37] at 6.[8]

Similar arguments were presented by the taxpayer in *Living Care Alternatives of Utica, Inc. v. United States*, 411 F.3d 621, 626 (6th Cir. 2005), which involved employment taxes owed by the operator of a nursing home whose income depended on Medicare and Medicaid billing. The case is factually dissimilar because the taxpayer in that case had previously entered into an installment agreement but defaulted and because a greater number of tax liabilities were involved. Like this case, however, the focus of the taxpayer's appeal was that the IRS appeals officers had abused their discretion in conducting the balancing test because they had failed to factor senior lienholders into the analysis and had failed to consider that "the net effect of any IRS levy would be to shut down the business without generating any tax revenue for the government." *Id*. at 628.

The Sixth Circuit began its discussion by observing that the statutory requirement of a balancing of interests is "novel in American tax law and injects into the calculus an equitable

---

[7] Also, Taxpayer initially responded to Defendant's motion for summary judgment by identifying lien priority as a disputed issue that precluded summary judgment.

[8] Taxpayer provides no specific facts nor any citation to the record in support of his contention that a levy on his assets would destroy his business. There is no discussion of a possible sale of the business as a going concern, only a possible sale of Taxpayer's farm to pay his tax liabilities.

10

consideration for the taxpayer and his concerns." *See Living Care*, 411 F.3d at 625. "There is little discussion or guidance about this requirement in legal scholarship or case law." *Id*. at 627. The court concluded that the general practice of reviewing courts is to show deference to appeals officers' conclusions regarding the balancing analysis. Accordingly, after considering the taxpayer's particular allegations of error and finding them to be without merit, the court concluded that no clear abuse of discretion had occurred. Specifically, the court found that the IRS had no obligation to consider in the balancing of interests "whether it will receive any revenue from a levy and sale, or whether the business will have to close down due to the levy and sale." *Id*. at 628. The court determined that the IRS is not required during the CDP process to investigate liens on a taxpayer's property and to determine whether the equity is sufficient to yield net proceeds that can be applied to the tax liabilities. *See id*. at 628-29.

In this case, the Court similarly concludes that Taxpayer has failed to demonstrate a clear abuse of discretion by the IRS. The Notice expressly reveals that the IRS performed a balancing of interests. In fact, a conclusion was reached that an installment agreement would be a less intrusive way to collect the outstanding balance of the tax liabilities. However, the option was rejected because Taxpayer had not complied with deposit requirements during the CDP process. The Notice reflects that Mr. Silverhorn and Mr. Tacheny specifically discussed that "the protracted IA is not normally beneficial to either party. Historically, the longer the term the more likelihood it would default." *See* Notice at AR7. Mr. Silverhorn reasoned: "One FTD penalty will default any agreement that is established and [Taxpayer has] a prior history of accruing penalties. " *See id*. It was not an abuse of discretion for the IRS to decline an installment agreement that appeared destined to fail. As stated by the court of appeals in *Living Care*: "The case law supports the proposition that the government is not required to continue subsidizing failing businesses by foregoing tax collection.

11

Any other conclusion would create a bizarre tax system with perverse incentives for businesses to maintain themselves on the edge of insolvency in order to enjoy immunity from tax enforcement." *See Living Care*, 411 F.3d at 628.

Further, the Court finds Taxpayer's reliance on *Cox* to be misplaced. Judge Friot concluded that a taxpayer who was unable to meet current tax liabilities could not be deemed ineligible for an installment agreement and automatically excluded from the balancing process required by § 6330(c)(3)(C). This conclusion was based on a provision of the Internal Revenue Manual cited by the IRS in that case, § 5.14.7.2(4). *See Cox*, 345 F. Supp. 2d at 1226. However, the Tenth Circuit has since determined that "the Internal Revenue Manual does not have the force of law and it confers no rights on taxpayers." *See Poindexter v. Commissioner*, 321 F. App'x 771, 773 (10th Cir. 2009) (citing *United States v. Lockyer*, 448 F.2d 417, 421 (10th Cir. 1971)).[9] Moreover, it does not appear the IRS applied a categorical exclusion in this case. Although the IRS stated in both the Notice and the attachment that Taxpayer did not "qualify" for an installment agreement due to the accrual of additional tax liabilities, an examination of the full explanation of Mr. Silverhorn's decision reveals that he fully considered Taxpayer's financial situation and payment history as well. The existence of equity in assets that could be used to partially satisfy Taxpayer's outstanding liabilities was also considered. In fact, Mr. Tacheny specifically raised a possibility that Taxpayer could sell his farm to pay some of the debt in order to justify an abatement of penalties, discussed below. *See* Notice at AR11. In the end, however, Taxpayer did not pursue this possibility but continued to insist on concessions by the IRS. This was a contributing factor in the Appeals Office's "determination to not enter into a protracted installment agreement unless it can be proven the

---

[9] Unpublished decision cited pursuant to Fed. R. App. P. 32.1 and 10th Cir. R. 32.1(A).

[Taxpayer] has made attempts to borrow or liquidate assets to pay down the liabilities." *See* Notice at AR13.

Finally, the Court notes that the decision under review does not necessarily foreclose the possibility of an installment agreement. The Notice concludes that the case should be sent back to the assigned revenue officer to continue with the proposed levy action. The Notice states, however, that the revenue officer retains discretion to grant an installment agreement once Taxpayer becomes compliant. Thus, if Taxpayer has satisfied the additional tax liabilities he incurred during the CDP process and remains current in his tax obligations, as argued in his brief, the possibility of an installment agreement remains open to him during the levy process.

For these reasons, the Court concludes that it was not a clear abuse of discretion for the IRS to reject Taxpayer's request for an installment agreement under the circumstances presented.

## II. Penalty Abatement

Taxpayer contends that the denial of an abatement of penalties was an abuse of discretion because he had reasonable cause for a failure to remit employment taxes based on financial hardship.

The Internal Revenue Code imposes mandatory penalties on employers who fail to pay taxes withheld from employees' wages and to make required deposits of such taxes. *See* 26 U.S.C. §§ 6651(a), 6656(a). To obtain abatement of these penalties, a taxpayer must prove "reasonable cause" for the failure. *See id.* §§ 6651(a), 6656(a); *see also United States v. Boyle*, 469 U.S. 241, 245-46 (1985). Treasury Regulations define this term to include situations where "the taxpayer exercised ordinary business care and prudence and was nevertheless unable to [comply with the requisite obligation]." *See* 26 C.F.R. § 301.6651-1(c)(1). The government urges a bright-line rule announced in *United States v. Brewery*, 33 F.3d 589 (6th Cir. 1994), which held that financial hardship cannot constitute "reasonable cause" for abating penalties as a matter of law. Taxpayer

13

urges a multi-factor or case-by-case analysis adopted by other courts. *See*, *e.g.*, *Fran Corp. v. United States*, 164 F.3d 814 (2d Cir. 1999); *East Wind Indus., Inc. v. United States*, 196 F.3d 499 (3d Cir. 1999).

Although the Tenth Circuit has not decided this issue, it appears the weight of authority favors Taxpayer's position. Every other federal appellate court to decide the issue has rejected the Sixth Circuit's bright-line rule. *See Staff IT, Inc. v. United States*, 482 F.3d 792, 794, 800 (5th Cir. 2007) (declining to decide the issue but noting positions of the Second, Third, Seventh and Ninth Circuits opposing the Sixth Circuit). Assuming the majority view is correct, this Court nevertheless finds no abuse of discretion in the IRS's conclusion that Taxpayer did not justify his failure to deposit and pay employment taxes.

In the attachment to the Notice, Mr. Silverhorn explains his analysis of the facts and circumstances offered by Taxpayer to excuse his delay in making required deposits. Mr. Silverhorn reviewed each of the thirteen circumstances, and found several that would impact cash flow and others that could suggest reasonable business care, such as not living an extravagant lifestyle or making speculative investments. However, Taxpayer's circumstances suggesting financial hardship were undercut by bank statements indicating he had a positive cash flow during the relevant time period. Also, Taxpayer's history of late deposits militated against a finding that a financial hardship had caused the incidents of delay. Moreover, Taxpayer did not mention, and thus Mr. Silverhorn did not consider, other pertinent facts that have been identified by courts as "primary factors in determining whether a taxpayer exercised ordinary business care." *See Staff IT*, 482 F.3d at 801 (these are: "(1) the taxpayer's favoring of other creditors over the government, which weighs against

a finding of reasonable cause, and (2) the taxpayer's willingness to decrease expenses and personnel, which weighs in favor of a finding of reasonable cause").[10]

In short, contrary to Taxpayer's argument, the record fully supports the IRS's conclusion that Taxpayer failed to establish "reasonable cause" for his noncompliance. Thus, Taxpayer has not shown the IRS abused its discretion in refusing to concede the penalties incurred on the tax liabilities at issue.

**Conclusion**

For the reasons set forth above, the Court finds no abuse of discretion in the IRS's decision to reject Taxpayer's requests for an installment agreement and an abatement of penalties and, instead, to continue with the levy process.

IT IS THEREFORE ORDERED that the Complaint for reversal and remand of the IRS's decision under review is DENIED. The decision is affirmed. Judgment will be entered accordingly.

IT IS SO ORDERED this 31st day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[10] The IRS notes in its brief, however, that Taxpayer supplied information unfavorable to him under such factors, including that he paid holiday and performance bonuses in 2004.

15